Arthur E. REICH et al., Appellees,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellant.

George D. ROWAN et al., Appellees,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellant.

Nos. 25902, 25903.

United States Court of Appeals,
Ninth Circuit.

Jan. 21, 1972.

Paul M. Ginsburg (argued), Meyer Rothwacks, Bennet N. Hollander, Tax Division, Johnnie M. Walters, Asst. Atty. Gen., Tax Division, Dept. of Justice, Washington, D.C.; K. Martin Worthy, Chief Counsel, Internal Revenue, Washington, D.C., for appellant.

Mark Townsend (argued), Los Angeles, Cal., Bruce W. Hyman, San Francisco, Cal., on the brief, for appellees.

Before JERTBERG and WRIGHT, Circuit Judges, and WILLIAMS, District Judge.*

* Honorable David W. Williams, Judge of the United States District Court for the Central District of California, sitting by designation.

WRIGHT, Circuit Judge:

These appeals from Tax Court decisions present two questions: (1) Are the taxpayers' reserves of geothermal steam an exhaustible natural resource? (2) Is geothermal steam a "gas" within the meaning of Internal Revenue Code §§ 263(c), 611(a), and 613(b), which allow a percentage depletion deduction for the intangible costs of drilling and developing oil and gas wells?

The Tax Court held in favor of the taxpayers on each question. Reich v. Commissioner, 52 T.C. 700 (1969) and Rowan v. Commissioner, 28 Tax Ct. Mem. 797 (1969). The Commissioner appeals. We affirm.

Taxpayers are all engaged in the business of drilling for geothermal steam in an area 75 miles north of San Francisco known as The Geysers. First discovered by a bear hunter in 1847, this canyon of steam fumaroles and geysers later became a tourist attraction. Successful commercial development of the steam field for geothermal power began in 1955.

Between 1957 and 1968 the taxpayers drilled 42 wells and the Pacific Gas and Electric Company built an electric generating plant to convert the energy in the superheated steam into electricity. The plant employs turbine generators, which are activated by the impulse of steam under pressure against a series of curved blades on a central rotating spindle. It has a capacity of 81,500 kilowatts. Pacific Gas and Electric is not a party to this appeal, and has no interest in the taxpayers' claims.

I.

■ The principal factual dispute between the parties before the Tax Court concerned the nature and exhaustibility of the steam reserves at The Geysers. After reviewing extensive documentary evidence and hearing expert testimony from geologists and engineers, the Tax Court made these findings of fact:

Geothermal steam is a gas. The geothermal steam at The Geysers is contained within a closed reservoir in a finite amount with no significant liquid influx to or boiling within its confines. The geothermal steam at The Geysers is an exhaustible natural resource which has depleted and is continuing to deplete.

Our review of the record convinces us that ample evidence supports this factual conclusion.

II.

■ The more difficult question is whether geothermal steam is subject to the depletion allowance. Internal Revenue Code § 611(a) says:

"In the case of mines, oil and gas wells, other natural deposits, and timber, there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion . . . ."

Section 613(b) fixed the depletion percentage for oil and gas wells at 27½ percent for the tax years here at issue.

The depletion allowance is designed to stimulate resource exploitation by ensuring that a developer can recover the capital invested in wasting assets.

"An allowance for depletion has been recognized in our revenue laws since 1913. It is based on the theory that the extraction of minerals gradually exhausts the capital investment in the mineral deposit. Presently, the depletion allowance is a fixed percentage of gross income which Congress allows to be excluded . . . . The present allowance, however, bears little relationship to the capital investment, and the taxpayer is not limited to a recoupment of his original investment. The allowance continues so long as minerals are extracted, and even though no money was actually invested in the deposit." Commissioner of Internal Revenue v. Southwest Exploration Co., 350 U.S. 308, 312, 76 S. Ct. 395, 397, 398, 100 L.Ed. 347 (1956).

The Commissioner's position is that this favorable tax treatment applies only

to petroleum and hydrocarbonaceous natural gas deposits, and cannot be construed to cover geothermal steam reserves. The Tax Court disagreed, holding that the steam deposit at The Geysers is a gas within the meaning of "oil and gas well" in the Code.

We are persuaded by the Tax Court's reasoning on this legal issue. The decisions are affirmed on the basis of the Tax Court's opinion: Reich v. Commissioner, 52 T.C. 700 (1969).